Dear Auditor and Inspector Jeff A. McMahan,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Does 70 O.S. 2001, § 5-129(B)(3), relating to school activity funds collected from vending concession contracts and school picture contracts, violate Okla. Const. art. X, § 17, or other parts of the Oklahoma Constitution?
¶ 1 Your question relates to handling of funds received from vending concession contracts and school picture contracts approved by a school district board of education, and whether, by virtue of the school board approving and entering into such contracts, the funds take on a public character, thus requiring them to be disbursed in accordance with Article X, Section 17 of the Oklahoma Constitution. If the receipts from vending machine concession contracts and school picture contracts are monies of the school district and thus "public funds," then Section 17 restricts the purposes for which such money can be spent; i.e., the money may not be given as a gift or loan of credit to a private person or entity.
¶ 2 Article X, Section 17 of the Oklahoma Constitution provides:
 The Legislature shall not authorize any county or subdivision thereof, city, town, or incorporated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual.
Id.
¶ 3 This provision of our Constitution was adopted to prevent the "investment of public funds in private enterprises."Lawrence v. Schellstede, 348 P.2d 1078, 1082 (Okla. 1960). A school district in Oklahoma was, at the time of drafting the Constitution, "a body corporate . . . possess[ing] the usual power of a corporation for public purposes," Okla. Rev. Stat. Ann., ch. 74, art. VII, § 7745 (1910); see id. art. VIII, § 7779. Thus, we conclude school districts were intended by the framers of the Constitution to be included in the scope of Article X, Section 17.
¶ 4 Title 70 O.S. 2001, § 5-129[70-5-129] provides, in pertinent part, as follows:
 A. The board of education of each school district shall exercise control over all funds and revenues on hand or hereafter received or collected, as herein provided, from student or other extracurricular activities or other revenue-generating sources listed in subsection B of this section that are conducted in the school district. Such funds shall be deposited to the credit of the account maintained for the benefit of the particular activity within the school activity fund. . . . Disbursements from each of the activity accounts shall be by check countersigned by the school activity fund custodian and shall not be used for any purpose other than that for which the account was originally created. The board of education, at the beginning of each fiscal year and as needed during each fiscal year, shall approve all school activity fund subaccounts, all subaccount fund raising activities and all purposes for which the monies collected in each subaccount can be expended.
Provided, the board of education may direct by written resolution that any balance in excess of the amount needed to fulfill the function or purpose for which an account was established may be transferred to another account by the custodian.
 B. The board of education of each school district may designate that any of the following revenue be deposited for the use of specific school activity accounts, or to a general activity fund within the school activity fund:
 1. Admissions to athletic contests, school or class plays, carnivals, parties, dances and promenades;
2. Sale of student activity tickets;
 3. Concession sales, including funds received from vending concession contracts and school picture contracts approved by the district board of education, and cafeteria or luncheon collections;
 4. Dues, fees and donations to student clubs or other organizations, provided that membership in such clubs or organizations shall not be mandatory;
 5. Income or revenue resulting from the operation of student organizations or club projects, provided, such revenue is not derived from the sale of property, supplies, products or other assets belonging to the school district. When approved by the board of education, student organizations or club projects may include fund raising activities, the revenues from which may be used for the purpose of purchasing goods or services otherwise considered to be general fund expenditures;
 6. Deposits for or collections for the purchase of class pictures, rings, pins, announcements, calling cards, annuals, banquets, student insurance and other such personal items; provided the cost of such items shall not be charged against other school funds; and
 7. Other income collected for use by school personnel and other school related adult functions.
 All other income, revenue, deposits or collections of any nature, including, but not limited to, Indian education support funds, laboratory fees, fees for the use of equipment owned or rented by the school district, deposits or assessments for breakage or supplies used in instructional courses, sale, exchange, lease, or rent of property, supplies or products originally acquired from funds belonging to the school district or through the management, use or production of property belonging to the school district, shall be deposited in accordance with the provisions of Section 335 of Title 62 of the Oklahoma Statutes.
Id. (emphasis added).
¶ 5 The cited statute, 62 O.S. 2001, § 335[62-335], in pertinent part, provides:
When any money is due any county, city, town or school district in this state from sale, lease or rental of any public property, or royalty, or for compensation for service of public employees or other purpose, it shall be paid over to the lawful treasurer thereof.
 The governing board shall have authority to direct by written resolution duly entered in the minutes of its meeting at the time such money is received or prior thereto that such money shall be credited to the fund account from which such property was derived or from which payment has been or will be made for such services rendered or other purposes.
 If there be no resolution by the governing board directing the disposition of the money received as contemplated herein it shall be the duty of the treasurer to credit such money so received to the general fund.
Id.
¶ 6 Thus, monies due to a school district from sale, lease or rental of any school district property, or royalty, or for compensation for service of public employees, is required to be paid over to the treasurer of the school district, and disbursed as directed by the board of education. If not directed otherwise by the governing body, such money must be deposited to the general fund. Id.
¶ 7 Section 335 of Title 62 is complemented by 70 O.S. 2001, §5-158[70-5-158] which provides, in pertinent part:
 A school district shall establish funds consistent with legal and operating requirements. Each school district shall maintain according to its own needs some or all of the following funds or ledgers in its system of accounts:
. . . .
 6. Trust and agency funds, to account for assets held by the school district as trustee or agent for individuals, private organizations or other governmental units or purposes, such as a retirement fund, employee health insurance fund or a school activity fund[.]
Id.
¶ 8 The question is whether revenues collected by the school board from vending machine or school picture contracts and held in a school activity fund under 70 O.S. 2001, § 5-129[70-5-129], are subject to the restrictions of Okla. Const. art. X, § 17. If such revenues are not monies of the district, but rather the school board is merely holding the money as a custodian or in trust for a private or benevolent purpose, the constitutional prohibition does not come into play. But if the revenues are "public funds" the board of education is restricted as to how, and for what purpose, the money may be spent. We conclude that the source andnature of money received controls whether it is "public money" of the school district, not the account into which it is deposited.
¶ 9 It is our understanding that a typical vending machine or school photography contract provides, in essence: (1) the contract is between the school district and the vendor; (2) the school district will allow the activity to be conducted on school property, using space designated by the school; (3) the school district grants the vendor the exclusive right to conduct the activity; (4) the school district will furnish electricity for operating necessary equipment; and (5) the vendor pays the school district a fee based on a percentage of the amount of gross revenues derived from the activity. Such contracts, we understand, do not normally specify the account into which the school district will deposit its share of revenues, nor specify the purpose for which the money will be spent. See Beverage 
Snack Agreement, Indep. Sch. Dist. I-29-Great Plains Coca-Cola Bottling Co. (photocopy on file with the Okla. Attorney General's Office).
¶ 10 A general rule of statutory construction is that statutes are presumed constitutional. Reherman v. Okla. Water Res. Bd.,679 P.2d 1296, 1300 (Okla. 1984). Use of monies in a school activity fund was previously examined in Attorney General Opinion 97-6. In that Opinion, we concluded that monies raised through student-initiated fund raising activities for benevolent purposes are not public funds. Id. at 11, 12. A primary consideration in Opinion 97-6 was that the money was not raised through state taxing activity, but was derived from private or non-state sources. Id. at 10-11 (citing In re State Dep't of Transp.,646 P.2d 605, 609-10 (Okla. 1982)) [hereinafter ODOT]. Therefore, the restrictions contained in Article X, Sections 14(A) and 15(A) of the Oklahoma Constitution (stating that taxes are to be levied only for public purposes, and prohibiting the State from giving gifts or lending its credit of public monies to private entities or persons) are not applicable to such funds.Id. Article X, Section 17 of the Oklahoma Constitution, to which you refer, is the section on prohibition of gifts of public money to private persons by school districts, cities and other political subdivisions, and is analogous to Article X, Section 15(A).
¶ 11 In ODOT, money received from the federal government or from private sources and held by the State Treasurer under provisions of the 1978 Railroad Revitalization Act, 66 O.S.Supp. 1978, §§ 302[66-302] .1 et seq., was determined not to be "public funds," and therefore the use of such non-state money for grants or loans to private railroad companies was determined not to violate Article X, Section 15 of the Oklahoma Constitution.ODOT, 646 P.2d at 610 -11. Similar results have been reached in cases on arrangements between municipalities and land developers as to reimbursement of utility costs. See WillowWind, Inc. v. City of Midwest City, 790 P.2d 1067, 1070 (Okla. 1989); City of Wewoka v. Billingsley, 331 P.2d 949, 952-53
(Okla. 1958).
¶ 12 The core issue you raise is whether revenues raised through payments from vending machine or school photography contractors is "public money" and therefore subject to constitutional restrictions. We conclude that vending machine or photography contract proceeds become monies of the school district when they derive from the use of property owned by the school district, and the contract is between the school district and the private entity. This view is supported by the language in the last paragraph of 70 O.S. 2001, § 5-129[70-5-129](B) which provides: "All other income, revenue, deposits or collections of any nature, including, but not limited to . . . sale, exchange, lease, or rent of property, supplies or products originallyacquired from funds belonging to the school district or throughthe management, use or production of property belonging to theschool district, shall be deposited in accordance with the provisions of Section 335 of Title 62 of the Oklahoma Statutes."Id. (emphasis added).
¶ 13 The Legislature intended that money derived from use of property belonging to the school district should be deposited in a fund or account from which the property was derived, or from which payment will be made for appropriate purposes, and if not otherwise designated, to the district's general fund. The provisions of 62 O.S. 2001, § 335[62-335] are compatible with 70 O.S.2001, § 5-129[70-5-129], since the latter statute allows the school board to designate the specific activity fund into which the proceeds of vending or photography contracts should be deposited. However, it must also be recognized that simply because money is deposited in a school activity fund does not necessarily remove it from constitutional restrictions on its use.
¶ 14 Whether public money in a specific activity fund may be used in a manner that benefits a private person or organization is controlled by the Constitution. If the money in a particular fund is money of the districts under the above use-of-school-property test, it may not be given (i.e., disbursed without consideration) to a private person or entity under Article X, Section 17 of the Oklahoma Constitution. If the money in a particular fund is not "public money," for example, it is money raised by students as described in Opinion 97-6, the prohibitions of Article X, Section 17 do not apply.[1]
¶ 15 Analysis on a case-by-case basis is thus needed to determine if revenues deposited in a school activity fund under Section 5-129(B) are monies of the district, or if they are private monies under Opinion 97-6. If money is paid directly to the school district pursuant to a contract under which a license is granted to a private entity, or consent is otherwise given for use of school property, we conclude the revenues of such a contract take on a public character, requiring the district to account for and apply such money in the same fashion as other funds of the school district. If, on the other hand, money is paid by students or patrons to private persons or organizations and then turned over to a custodian designated by the district to oversee a particular school activity fund, the money does not necessarily take on a public character, as reasoned by Opinion 97-6.
¶ 16 Simply because money in an activity fund is "public money" does not mean it cannot be disbursed under any circumstances to a private person. To the contrary, if there is valid consideration for such payment it is not a prohibited "gift." Johnston v.Conner, 236 P.2d 987, 991 (Okla. 1951); Hawks v. Bland,9 P.2d 720, 722 (Okla. 1932). Disbursement of money to a private entity pursuant to a contract for a valid public purpose does not violate the Constitution. Way v. Grand Lake Ass'n, Inc.,635 P.2d 1010, 1018 (Okla. 1981). The determination of what is, or is not, a valid public purpose for use of public money is a matter for the governing body of the entity spending the money to decide. State ex rel. Brown v. City of Warr Acres,946 P.2d 1140, 1144 (Okla. 1997). Absent a showing of fraud or arbitrariness, a finding by a governing body that a project serves a public purpose will not be disturbed by the courts.Id.; see also Grimes v. City of Oklahoma City, 49 P.3d 719,726 (Okla. 2002).
¶ 17 Whether a particular fund, including money in a school activity fund derived from vending machine or photography contract proceeds, can be spent for a specific purpose such as disbursement to a private or benevolent organization, is for the school board to decide based on whether the expenditure is for a public purpose. Brown, 946 P.2d at 1144. Such questions of fact cannot be determined in an Attorney General's Opinion. 74O.S. 2001, § 18[74-18](b)(A)(5).
¶ 18 It is, therefore, the Official Opinion of the AttorneyGeneral that:
 1. Money received by school districts from vendors pursuant to vending concession contracts and school picture contracts becomes school district money. 70 O.S. 2001, § 5-129(B).
 2. The fact that money from a vending machine contract or school picture contract is deposited in a school activity fund does not change its character as "public money." 62 O.S. 2001, § 335[62-335]; 70 O.S. 2001, § 5-129(B).
 3. Title 70 O.S. 2001, § 5-129(B)(3), relating to school activity funds collected from vending concession contracts and school picture contracts does not, on its face, violate Article X, Section 17 of the Oklahoma Constitution.
 4. Public money in a school activity fund may only be disbursed to private persons or organizations for a valid public purpose. Johnston v. Conner, 236 P.2d 987, 991 (Okla. 1951); Hawks v. Bland, 9 P.2d 720, 722 (Okla. 1932).
 5. Whether any expenditure of public money from a school activity fund is for a valid public purpose under the Oklahoma Constitution, Article X, Section 17, must be determined by the school board on a case-by-case basis. State ex rel. Brown v. City of Warr Acres, 946 P.2d 1140, 1144 (Okla. 1997); Grimes v. City of Oklahoma City, 49 P.3d 719, 726 (Okla. 2002). Such question of fact cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, § 18(b)(A)(5).
W.A. DREW EDMONDSON Attorney General of Oklahoma
LYNN C. ROGERS Assistant Attorney General
[1] Private money held in a student activity fund is nevertheless subject to strict control. Where property is entrusted to a person for a specific purpose (for instance, money in a custodial account), misappropriation of such property is a felony where value of the property is over $500, or a misdemeanor if under $500. 21 O.S. Supp. 2002, § 1451[21-1451](B).